**Lawrence CAPERS, Leonard Capers, Petitioners–Appellants,**

v.

**Harry K. SINGLETARY, as Secretary, Department of Corrections, State of Florida, Respondent–Appellee.**

No. 92–4016.

United States Court of Appeals, Eleventh Circuit.

April 23, 1993.

---

Louis M. Jepeway, Jr., Miami, FL, for Lawrence Capers.

Bennett H. Brummer, P.D. and Elliot H. Scherker, Miami, FL, for Leonard Capers.

Robert W. Butterworth and Fariba N. Komeily, Asst. Atty. Gen., Miami, FL, for appellee.

Before KRAVITCH and BIRCH, Circuit Judges, and CLARK, Senior Circuit Judge.

BIRCH, Circuit Judge:

The defendants, Lawrence Capers and Leonard Capers, appeal from the denial of their habeas corpus petition by the district court. Because the defendants failed to establish a prima facie showing of purposeful discrimination in the state's use of peremptory challenges, we AFFIRM.

## I. BACKGROUND

The defendants were convicted by a Florida jury of three counts of third degree murder. The charged offenses occurred during the McDuffie riots, a series of civil disturbances in Dade County precipitated by the acquittal of several white police officers charged with the homicide of a black man. At the defendants' joint trial, the state was allowed forty peremptory challenges. The prosecutor exercised twenty-seven challenges, of which twenty were used to excuse black prospective jurors. One prospective juror who was black was accepted by the state, but removed by counsel for one of the codefendants tried jointly with Lawrence and Leonard Capers. The selected jury included three black persons, one of whom served as foreman. At the time of trial, black persons comprised 15% of Dade County's population.

The defendants objected to each use of the state's peremptory challenges to re-

move potential jurors who were black. During voir dire and at the completion of jury selection, the defendants moved for an evidentiary hearing to present evidence of a systematic exclusion of black persons from jury service in violation of *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965).[1] The motions for evidentiary hearing were denied. The defendants' convictions were upheld upon direct appeal. 433 So.2d 1323, 1324. After exhausting the procedures for post-conviction relief available under Florida law, the defendants filed a petition for writ of habeas corpus in the United States District Court, Southern District of Florida. The district court denied the defendants' request for an evidentiary hearing on their *Swain* claim on the ground that the defendants' allegations of fact were insufficient to establish a prima facie case of a systematic exclusion of black prospective jurors that continued into the defendants' trial. We AFFIRM.

## II. DISCUSSION

In *Swain v. Alabama*, the Supreme Court considered the degree to which the equal protection clause limits the state's ability to exercise peremptory challenges.[2] The Court recognized that, historically, peremptory challenges were exercised secretly and could be used for any reason, or for no reason at all. *Swain*, 380 U.S. at 219–221, 85 S.Ct. at 835–36. "The presumption in any particular case must be that the prosecutor is using the State's challenges to obtain a fair and impartial jury to try the case before the court." *Id.* at 222, 85 S.Ct. at 837. This presumption may be disre-

---

1. The written request for an evidentiary hearing included a copy of a report of the Governor's Commission formed in the wake of the McDuffie riots concluding that certain assistant state attorneys were guilty of excluding jurors based upon race. There is no suggestion that the attorneys who prosecuted the defendants were those accused of discrimination in the report. The defendants also proffered documents regarding the use of peremptory challenges by other assistant state attorneys in six cases tried in Dade County. Finally, the defendants offered affidavits from four attorneys practicing in Dade County stating that Dade County prosecutors generally used peremptory challenges to remove black persons from petit juries. The district court concluded that this evidence was insufficient to establish a prima facie case of

historical systematic discrimination, the first element under *Swain*. It is unnecessary for us to resolve this issue.

2. A portion of *Swain* was overruled in *Batson v. Kentucky*, 476 U.S. 79, 96, 106 S.Ct. 1712, 1723, 90 L.Ed.2d 69 (1986) with the result that "a defendant may establish a prima facie case of purposeful discrimination in selection of the petit jury solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial." The defendants' convictions became final prior to the *Batson* decision; their challenge to the state's use of peremptory challenges must therefore be determined under *Swain*. *Allen v. Hardy*, 478 U.S. 255, 106 S.Ct. 2878, 92 L.Ed.2d 199 (1986).

garded, however, where the prosecutor has engaged in a systematic exclusion of black persons from juries over an extended period with the result that "the peremptory system is being used to deny [black persons] the same right and opportunity to participate in the administration of justice enjoyed by the white population." *Id.* at 224, 85 S.Ct. at 838.

This court has outlined the elements of a claim that the state has used its peremptory challenges in violation of *Swain.*

[The] petitioner must prove on specific facts that [the prosecutor] had a systematic *and intentional* practice of excluding blacks from traverse juries in criminal trials through the exercise of peremptory challenges, and that this practice continued unabated in petitioner's trial. The exclusion must have occurred "in case after case, whatever the circumstances, whatever the crime and whoever the defendant [or the victim] may be." *Swain,* 380 U.S. at 223, 85 S.Ct. at 837. Petitioner is not required to show that the prosecutor *always* struck *every* black venireman offered to him, [*United States v. Pearson,* 448 F.2d 1207, 1217 (5th Cir.1971)], but the facts must manifestly show an intent on the part of the prosecutor to disenfranchise blacks from traverse juries in criminal trials in his circuit....

*Willis v. Zant,* 720 F.2d 1212, 1220 (11th Cir.1983), *cert. denied,* 467 U.S. 1256, 104 S.Ct. 3546, 82 L.Ed.2d 849, *and cert. denied,* 467 U.S. 1256, 104 S.Ct. 3548, 82 L.Ed.2d 851 (1984).

The district court rejected the requests for an evidentiary hearing on the ground that the defendants failed to offer a prima facie case that the alleged systematic exclusion of black citizens from petit juries "continued unabated" in the defendants' trial. *Willis,* 720 F.2d at 1220. With regard to the state's use of peremptory challenges in the *defendants'* trial, counsel proffered only the number of peremptory strikes used against black potential jurors (20), as compared to the number of strikes

exercised against potential jurors who were white (7). The district court determined that this proffer was inadequate in view of the number of black jurors accepted by the state despite available peremptory challenges and the probable, racially neutral basis for the state's challenges, as revealed during voir dire.

By using its remaining challenges, the prosecution could have removed the three black persons who served upon the jury. The defendants contend that the district court erred by considering the number of black jurors who were empaneled without challenge. The presence of black persons on the empaneled jury is, of course, not determinative in a *Swain* claim. *Willis,* 720 F.2d at 1220. The fact that the prosecutor did not exercise available peremptory challenges, thereby allowing a number of black jurors to serve on the jury, however, tends to rebut the inference of intentional discrimination that may be drawn from the bare number of peremptory challenges exercised against black potential jurors. In *United States v. Dennis,* 804 F.2d 1208, 1210–11 (11th Cir.1986) (per curiam), *cert. denied,* 481 U.S. 1037, 107 S.Ct. 1973, 95 L.Ed.2d 814 (1987), we held that the defendant failed to make out a prima facie case of purposeful discrimination in the state's exercise of peremptory challenges. "[T]he unchallenged presence of two blacks on the jury undercuts any inference of impermissible discrimination that might be argued to arise from the fact that the prosecutor used three of the four peremptory challenges he exercised to strike blacks from the panel...." 804 F.2d at 1211. Similarly, in *United States v. Allison,* 908 F.2d 1531, 1538 (11th Cir. 1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1681, 114 L.Ed.2d 77 (1991) the defendant's proffer of the number of peremptory challenges exercised against black persons was insufficient to raise any inference of purposeful discrimination, in view of the fact that the prosecution had allowed three black jurors to be seated without exercising available peremptory challenges.[3] Al-

---

3. By contrast, in *Love v. Jones,* 923 F.2d 816, 820 (11th Cir.1991), the petitioner established a violation of *Swain* based upon historical evidence of the systematic exclusion of black potential jurors bolstered by the fact that the prosecutor had used his peremptory challenges to excuse *every* black person from *both* of the petitioner's trials.

though *Allison* and *Dennis* were decided under the more liberal evidentiary scheme established in *Batson*, the unchallenged presence of black jurors on the venire that heard a defendant's case is also a significant fact with regard to the second element of a *Swain* claim: a petitioner's burden to show that the prosecutor's systematic exclusion of black persons continued unabated into his trial. *See, e.g., Thomas v. Wainwright*, 788 F.2d 684, 689 (11th Cir. 1986) (per curiam) (rejecting *Swain* claim where both the trial and sentencing juries included a black juror).[4]

Any inference of intentional discrimination that might arise from the number of peremptory strikes exercised against black potential jurors is further rebutted by evident, racially neutral justifications for the majority of the state's peremptory challenges. Ten of the black potential jurors who were struck responded during voir dire that they were sympathetic to the defendants' actions and blamed the riot upon the failure of the criminal justice system to convict McDuffie's killers. Two potential jurors related incidents suggesting an antagonism towards the police. One person responded that he preferred not to be a juror in the case. One potential juror had been charged with and sentenced for a manslaughter offense that she claimed was committed in self-defense. Of the remaining six black potential jurors, four responded either that they had transportation problems, difficulties posed by medical conditions or by a limited understanding of English, or that jury service would be a hardship because they were caretakers for young children. When combined with the number of black jurors not challenged by the state, the existence of plausible, racially neutral bases for the state's exercise of peremptory challenges, apparent on the record, is sufficient to nullify any inference of discrimination that otherwise might be drawn from the number of strikes used to remove black potential jurors.

The defendants argue that the district court erred in considering the prosecutor's probable reasons for removing black potential jurors without holding an evidentiary hearing to allow the defendants to develop their showing of a *Swain* violation. Specifically, the defendants desired to question the prosecutor regarding his reasons for exercising peremptory challenges against black jurors. Such an evidentiary hearing would be warranted only if the defendants had established a prima facie case with regard to both elements of a *Swain* claim as set out in *Willis*, 720 F.2d at 1220. In order to establish a prima facie case with regard to the second element, the defendants were required to allege facts sufficient to raise an inference of purposeful discrimination at the defendants' trial. This burden is no lighter than that of a petitioner attempting to show that jury selection at his trial violated *Batson*. The Supreme Court has directed trial judges, in evaluating *Batson* claims, to "consider all relevant circumstances" in determining whether the defendant has established a prima facie case that potential jurors were excluded from his or her venire because they were black. *Batson*, 476 U.S. at 97, 106 S.Ct. at 1723. In *Dennis*, we held that the defendant did not make out a prima facie case of intentional discrimination where the prosecutor's use of three of four challenges to remove black potential jurors was mitigated by the unchallenged presence of black jurors on the venire and the existence of plausible reasons to strike the challenged jurors based on their responses during voir dire. 804 F.2d at 1211. It would be anomalous to allow a defendant, in establishing a prima facie case, to rely upon the lack of any plausible reasons for the prosecutor's challenges, and yet preclude the trial court from considering this factor when it tends to negate an inference of purposeful discrimination. Guided by *Batson* and *Dennis*, we conclude that the district court did not err by considering the

---

**4.** Similarly, the number of black jurors accepted by the prosecutor in previous trials, despite available peremptory challenges, may preclude a petitioner from establishing the first element of a *Swain* violation: history of intentional, systematic exclusion of black persons from petit juries. *Willis v. Kemp*, 838 F.2d 1510, 1519 (11th Cir.1988) (no prima facie case where, in the past, the prosecutor had struck 70 black jurors, but had accepted 72, of which 65 could have been excused by peremptory challenge), *cert. denied*, 489 U.S. 1059, 109 S.Ct. 1328, 103 L.Ed.2d 596 (1989).

probable reasons for the state's challenges when determining whether the defendants had established a prima facie showing of a *Swain* violation. The responses of potential jurors during voir dire are relevant circumstances that may raise or negate an inference of purposeful discrimination for the purposes of a claim under *Swain*.

 The defendants did not augment their attempt to show the intentional exclusion of black potential jurors in their trial with any direct evidence of discriminatory intent, such as the commentary or questions of the prosecutor during voir dire. *See Allison*, 908 F.2d at 1538 (defendant may establish prima facie claim of purposeful discrimination based upon prosecutor's statements during voir dire). Further, the defendants did not compare the characteristics of the black potential jurors who were struck with white jurors accepted by the prosecution. *Id.* (the fact that white persons were chosen for the petit jury who seem to have the same qualities as stricken black venirepersons may support prima facie case of discrimination). In short, with respect to the jury that was selected for the defendants' joint trial, the defendants have failed to "identify facts and circumstances that support the inference of discrimination." *Id.* (quoting *United States v. Young–Bey*, 893 F.2d 178, 180 (8th Cir. 1990). In order to establish that the prosecution's alleged practice of systematically excluding black citizens from the jury continued unabated in the defendants' trial, defense counsel offered only the number of strikes exercised to excuse black potential jurors. "In making out a prima facie case, 'the defendant must point to more than the bare fact of the removal of certain venirepersons and the absence of an obvious valid reason for the removal.'" *Id.* at 1538 (quoting *Young–Bey*, 893 F.2d at 179). In this case, any inference of purposeful discrimination that might arise from the use of twenty peremptory challenges to excuse black potential jurors is nullified by the number of black jurors accepted by the state despite available challenges and the existence of nondiscriminatory reasons, apparent on the record of voir dire, to justify the majority of the state's challenges.

## III. CONCLUSION

With regard to the requirement that the prosecutor's alleged practice of systematic discrimination continued into the defendants' trial, the defendants proffered only the number of peremptory challenges exercised against black potential jurors as compared to the number exercised against potential jurors who were white. We need not decide whether, standing alone, such a showing would satisfy a defendant's burden with regard to this element of a *Swain* violation. Here, any inference of discrimination that might arise from the prosecutor's use of peremptory challenges is negated by the unchallenged presence of black jurors and the record of voir dire, which reveals various nondiscriminatory rationale for the state's challenges.

AFFIRMED.