[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-12916
Non-Argument Calendar

_____

D.C. Docket No. 1:17-cr-00237-ELR-JKL-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

BILLY WAYNE MCCLINTOCK,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(April 24, 2019)

Before TJOFLAT, WILLIAM PRYOR, and GRANT, Circuit Judges.

PER CURIAM:

A jury convicted Billy Wayne McClintock of conspiring to commit mail fraud (one count) and of committing actual mail fraud (six counts). The convictions were based on a bogus investment scheme. McClintock and his coconspirator convinced people to invest in something they called "the Trust." The Trust allegedly was a European-based investment opportunity that gave investors a 38% return. It turns out the Trust was a Ponzi scheme, and McClintock and his coconspirator defrauded hundreds of investors out of millions of dollars.

McClintock raises two issues on appeal. First, he argues that the District Court erred by denying his motion for a judgment of acquittal. In his motion, McClintock argued that there was insufficient evidence to show that he acted with criminal intent.[1] Second, he argues that the District Court abused its discretion by denying his motion for a mistrial, a motion that was based on improper witness testimony. We reject both and affirm.

I.

First, we set out the standard of review. Then, we lay out the elements of both offenses and consider whether there was enough evidence such that the jury could have reasonably found the Government proved each element beyond a reasonable doubt.

---

[1] At trial, McClintock admitted that the Trust was bogus. He claimed that he didn't know it was bogus, and he tried to pin the criminal responsibility on his coconspirator, saying she was the brains of the operations.

2

"We review the sufficiency of the evidence de novo, viewing the evidence in the light most favorable to the government and accepting all reasonable inferences in favor of the verdict." *United States v. Mendez*, 528 F.3d 811, 814 (11th Cir. 2008) (per curiam) (citation omitted). We accept all reasonable inferences in favor of the verdict if the evidence is direct or circumstantial. *United States v. Williams*, 390 F.3d 1319, 1324 (11th Cir. 2004).

We will disturb a jury's verdict only if no reasonable juror could have concluded that the defendant was guilty beyond a reasonable doubt. *United States v. Townsend*, 630 F.3d 1003, 1009 (11th Cir. 2011) (citation omitted). A jury may reasonably find guilt beyond a reasonable doubt, even if the evidence fails to "exclude every reasonable hypothesis of innocence." *United States v. Cruz-Valdez*, 773 F.2d 1541, 1545 (11th Cir. 1985) (en banc) (citation omitted). Thus, the jury is free to choose among alternative, reasonable interpretations of the evidence. *See id.* (citation omitted).

Credibility questions are for the jury, and we assume that the jury resolved them "in the way that supports [its] verdict." *See United States v. Garcia-Bercovich*, 582 F.3d 1234, 1238 (11th Cir. 2009). If a defendant takes the stand in his own defense, the jury is free to reject his testimony; in fact, it may view his false explanatory statements as substantive evidence of guilt. *United States v. Allison*, 908 F.2d 1531, 1535 (11th Cir. 1990) (citation omitted). This is especially

3

true when guilt turns on inherently subjective elements, such as a defendant's intent or knowledge. *United States v. Mateos*, 623 F.3d 1350, 1362 (11th Cir. 2010) (citation omitted).

We turn now to the elements of the offenses.

To convict a defendant of conspiring to commit mail fraud, "the government must prove that (1) a conspiracy [to commit mail fraud] existed; (2) the defendant knew of it; and (3) the defendant knowingly and voluntarily joined it." *See United States v. Moran*, 778 F.3d 942, 960 (11th Cir. 2015) (citation omitted). The government must prove that the defendant knew about the conspiracy's "essential nature." *Id.* (citation omitted). Thus, a defendant may be found guilty even if he plays a minor role only and even if he does not know all of the conspiracy's details. *United States v. Perez-Tosta*, 36 F.3d 1552, 1557 (11th Cir. 1994) (citation omitted). That said, a "defendant must have 'a deliberate, knowing, and specific intent to join the conspiracy.'" *United States v. Pielago*, 135 F.3d 703, 720 (11th Cir. 1998) (citation omitted). "Evidence that a defendant personally profited . . . may provide circumstantial evidence of [his] intent to participate in that fraud." *United States v. Bradley*, 644 F.3d 1213, 1239 (11th Cir. 2011) (citation omitted).

To convict a defendant of mail fraud, the government must prove that the defendant (1) intentionally participated in a scheme to defraud someone of money

4

or property and (2) used the mail in furtherance of that scheme. *United States v. Hill*, 643 F.3d 807, 858 (11th Cir. 2011) (citation omitted).

As we said above, McClintock's subjective intent is the only element at issue. Accepting all reasonable inferences in favor of the verdict, there was sufficient evidence to support McClintock's convictions. The Government showed that McClintock signed up investors himself. He gave his coconspirator directions and instructions about the Trust. He controlled the bank accounts where the investors' money was deposited, and he wrote checks to the investors. There was no evidence that McClintock ever communicated with anyone in Europe about the Trust during the scheme. Nor was there any evidence that he ever actually invested any of the investors' money. On top of all this, McClintock pocketed $1.5 million from the scheme. From this, the jury could have reasonably inferred that McClintock knew that the Trust investment scheme was bogus. Finally, because McClintock testified and the jury still convicted, his statements may also count as substantive evidence of his guilt. *Allison*, 908 F.2d at 1535.

## II.

McClintock moved for a mistrial based on the testimony given by one of the Government's witnesses. The witness is a lawyer for the Securities and Exchange Commission, and she investigated the Trust as part of her work at the SEC. The Government asked the witness whether her investigation was ever resolved. Her

answer was this: "We did file a complaint, yes.  So at the end of our investigation we determined that there had been fraud committed by . . . Mr. McClintock . . . ."  McClintock objected and argued the testimony invaded the ultimate issue for the jury.  In response, the Government said that its focus was the filing of the complaint, and it said the witness didn't need to get into the substantive nature of the SEC's findings.  Thus, the District Court sustained the objection, told the jury to disregard the testimony, and struck it from the record.

The issue surfaced again when the witness was cross examined.  After asking several questions about the difference between civil cases[2] and criminal cases, McClintock asked this question: "So when you say that you made a finding of fraud, . . . you're talking specifically about your civil SEC case; right?"  The District Court gave the witness permission to answer, and this exchange took place:

> A:    I think fraud is fraud, so regardless of what the burden is, when I'm looking at whether a fraud occurred, I'm looking at whether there was fraud, not what someone's burden is in proving that there is fraud.

> Q:    So when there's fraud, there's fraud.  So what you're actually saying is if there's fraud in a civil case, there's fraud in a criminal case?

> A:    I mean, I think fraud is fraud, yes.

---

[2] The SEC has civil—not criminal—power.

6

Then, McClintock moved for a mistrial. He argued that the Government had elicited from the witness that she made a finding of fraud. The Court denied it. Later, the Court gave the jury a curative instruction.[3]

We review the denial of a motion for a mistrial for an abuse of discretion. *See United States v. Grzybowicz*, 747 F.3d 1296, 1311 (11th Cir. 2014). We assume the jury followed the District Court's curative instruction. *See United States v. Almanzar*, 634 F.3d 1214, 1223 (11th Cir. 2011) (citation omitted). Thus, because the Court gave a curative instruction, we will reverse the District Court's denial of McClintock's motion for a mistrial only if the objected-to testimony was so prejudicial that it's entirely incurable. *United States v. Dodd*, 111 F.3d 867, 870 (11th Cir. 1997) (per curiam) (citation omitted).[4]

The testimony from the SEC lawyer was not so prejudicial that it was incurable. And as we explained above, there was plenty of evidence—without the

---

[3] This was the instruction:

Ladies and gentlemen, before we continue let me just expound or elaborate on a directive that I gave you earlier when I asked you to disregard a certain response that came from this particular witness. I will tell you that notwithstanding the testimony of this witness or anybody else, a finding by the SEC does not establish guilt in a criminal case. Civil and criminal cases do involve separate burdens of proof. I have charged you in this case on the burden of proof in a criminal trial because that is the trial that we are dealing with here, but they do involve different and distinct burdens of proof.

[4] The Government argues that McClintock cannot contest this issue because of the invited-error doctrine. Because McClintock loses on the merits, we need not consider the invited-error issue.

witness's improper statement—that would have allowed the jury to infer that McClintock knew about the fraud and knowingly joined in it.

McClintock cites *Dunn v. United States*, 307 F.2d 883 (5th Cir. 1962),[5] to support his argument that the District Court abused its discretion by not declaring a mistrial. In *Dunn*, a prosecutor argued in his opening statement that the case was "replete with fraud" and "one of the most flagrant cases [it had] ever tried." *Id.* at 885. During closing argument, the prosecutor commented on the defendant's relationship with an alleged kick-back arrangement. *Id.* The defendant objected and moved for a mistrial. *Id.* We found that, despite a curative instruction, the District Court should have granted the motion. *Id.* at 885–86. We noted that the government's initial comments were improper because counsel is prohibited from (1) expressing a personal opinion about a case, (2) stating facts not in evidence, and (3) making unwarranted inferences. *Id.* at 885–86. We also noted that the government's statements in closing, which related to the veracity of a key witness, were also undoubtedly prejudicial. *Id.* at 886.

This case is distinguishable from *Dunn*. Here, the improper comment came from a witness, not the prosecutor. And here, the witness's comment was less inflammatory than the government's statement in *Dunn*.

---

[5] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down by the close of business on September 30, 1981.

In sum, there is no reasonable probability that, but for the alleged error, the outcome of McClintock's trial would have been different. *Grzybowicz*, 747 F.3d at 1311 (noting that a defendant typically is entitled to a mistrial only if there's a "reasonable probability that, but for the alleged error, the outcome of the trial would have been different" (citation omitted)).  Thus, the District Court did not abuse its discretion.

III.

The judgment of the District Court is

**AFFIRMED.**