**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**Lowden DAVID, Defendant-Appellant.**

**No. 85–8956
Non-Argument Calendar.**

United States Court of Appeals,
Eleventh Circuit.

Nov. 13, 1986.

Ray H. Ledford (Court-appointed), Atlanta, Ga., for defendant-appellant.

H. Allen Moye, Drug Task Force, Atlanta, Ga., for plaintiff-appellee.

Before RONEY, Chief Judge, HATCHETT, Circuit Judge, and HENDERSON *, Senior Circuit Judge.

HATCHETT, Circuit Judge:

A grand jury indicted appellant, Lowden David, for violations of 21 U.S.C. § 846 (conspiracy to possess cocaine with intent to distribute it in violation of 21 U.S.C. § 841(a)(1)) and 18 U.S.C. § 1952(a)(3) (use of the United States mails in aid of racketeering). A jury convicted him of violating 21 U.S.C. § 846, but acquitted him of violating 18 U.S.C. § 1952(a)(3). He raises two issues on appeal. We vacate the judgment and remand.

* *See* Rule 3(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

### Issue 1: Rule 609, Federal Rules of Evidence

■ David contends that the district court improperly denied a motion in limine which requested a restriction on the government's right to impeach him with a prior conviction if he took the witness stand. David did not testify. He argues that he was denied a defense to the charges by the court's ruling.

■ Because David never testified, he has waived review of the court's ruling. A defendant must testify in order to raise and preserve for review the claim of improper impeachment with a prior conviction. *Luce v. United States,* 469 U.S. 38, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984); *United States v. Wolfe,* 766 F.2d 1525 (11th Cir.1985).

### Issue 2: Peremptory Challenges

During the trial, David objected to the government's use of its peremptory challenges to strike three black jurors: two of the three black jurors on the panel and a black juror from the pool of alternate jurors. One black juror and a black alternate were seated. The district court concluded that David had not made a showing that would entitle him to any relief under *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759, *reh'g denied,* 381 U.S. 921, 85 S.Ct. 1528, 14 L.Ed.2d 442 (1965).

David filed his brief before the Supreme Court announced in *Batson v. Kentucky,* —— U.S. ——, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), a new evidentiary standard for establishing when a prosecutor's use of peremptory challenges violates the Equal Protection Clause.

The government briefed the effect of *Batson.* The government urges that *Batson* should not be applied to this case, because this case was tried before *Batson* was announced. The government also argues that the district court acted properly in finding that no prima facie case of discrimination was shown. The government also argues that merely showing that David is black and that blacks were per-

emptorily challenged does not establish a prima facie case. Rather, the government argues that David should have articulated "other relevant circumstances" which "raise an inference" of discriminatory intent. *Batson v. Kentucky,* at ——, 106 S.Ct. at 1723.

The government also argues that the record reflects that the black veniremen were not discharged because of race. This fact is shown because the prosecutor did not strike the third black juror from the panel, though he had a peremptory challenge available to do so. Second, the striking of the black male venireman was consistent with the striking of four other veniremen who were present or former employees of the federal government or the postal service. (Three were struck by the appellant and two by the government.) Finally, the government points out that the black female venireperson who was struck by the government was pregnant and two months into maternity leave from her job. The government argues that this record is sufficient to entitle the district court's conclusions to a presumption of correctness. *See Wainwright v. Witt,* 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985).

The government cites *United States v. Dennis,* 786 F.2d 1029, 1048–49 (11th Cir. 1986), in which we held that a showing that the prosecutor had used two of his three peremptory challenges to strike blacks from a jury venire did not establish a prima facie case of discrimination. The government points out that though the court was bound by *Swain,* we also stated we would find no prima facie case of discrimination merely because the prosecutor used two of his three regular strikes to challenge blacks and used his only alternate challenge to strike a black. 786 F.2d at 1049 n. 24.

## A. Applicability of *Batson*

■ The legal environment has sufficiently changed as a result of *Batson.* This is a direct appeal of a criminal conviction in the United States Courts. The Supreme Court recently held that the decision in *Batson* should not be applied retroactively on collateral review of convictions that became final before the *Batson* opinion was announced. *Allen v. Hardy,* —— U.S. ——, 106 S.Ct. 2878, 92 L.Ed.2d 199 (1986). The Court expressed no view on whether the decision in *Batson* should be applied to cases that were pending on direct appeal at the time the decision was announced. *Allen v. Hardy,* at ——, n. 1, 106 S.Ct. at 2880, n. 1. The Supreme Court has granted certiorari on the issue of application of *Batson* to cases pending on direct appeal. *See Griffith v. Kentucky,* —— U.S. ——, 106 S.Ct. 2274, 90 L.Ed.2d 717 (cert. granted June 2, 1986) and *Brown v. United States,* —— U.S. ——, 106 S.Ct. 2275, 90 L.Ed.2d 718 (cert. granted June 2, 1986).

The misuse of peremptories issue was raised at trial. When the law changes while cases are pending on appeal, this Court has commonly remanded to the lower court for consideration of the new principle. *See Stewart v. Bailey,* 561 F.2d 1195, *reh'g denied,* 565 F.2d 163 (5th Cir.1977); *Thurston v. Dekle,* 578 F.2d 1167 (5th Cir. 1978). This would not be necessary if the appellate court decided that the change should not be applied retroactively.

The government cites *Solem v. Stumes,* 465 U.S. 638, 104 S.Ct. 1338, 1341, 79 L.Ed.2d 579 (1984) as setting forth three factors to be used in evaluating whether a particular case should be applied retroactively: (1) the purpose to be served by the new standard; (2) the extent or reliance on the old standards by law enforcement officers; and (3) the effect on the administration of justice of a retroactive application of the new standards. *Shea v. Louisiana,* 470 U.S. 51, 105 S.Ct. 1065, 84 L.Ed.2d 38 (1985) is the governing authority for application of a new decision to cases pending on direct appeal. In *Shea,* the Court adopted the distinction urged by Justice Harlan in *Desist v. United States,* 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969) (dissenting opinion) between direct appeal and collateral review. *See also United States v. Johnson,* 457 U.S. 537, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982). *Shea* specifi-

cally distinguishes *Stumes* as involving a federal collateral attack upon a state conviction which has become final, in contrast with a pending and undecided direct review of a judgment of conviction. *See Shea,* 470 U.S. at 57, 105 S.Ct. at 1069, 84 L.Ed.2d at 46.

Even if *Solem v. Stumes* were applicable, the three factors would favor application of *Batson* to this case. The purpose of the new standard is to vindicate the guarantee of equal protection; this purpose is served by remand, where a more careful factual inquiry can be made by the district court.[1] The command of equal protection was present before the decision in *Batson; Swain* "should have warned prosecutors that using peremptories to exclude blacks on the assumption that no black juror could fairly judge a black defendant would violate the Equal Protection Clause." *Batson,* —— U.S. at ——, 106 S.Ct. at 1725 (White, J., concurring). Prosecutors' reliance on the old evidentiary standard was misplaced if the reliance led to acts of discrimination. In *Allen v. Hardy,* the Supreme Court linked the justifiableness of reliance on *Swain* to the burden of proof, *Allen v. Hardy,* —— U.S. at ——, 106 S.Ct. at 2881; prosecutors reasonably omitted to articulate reasons for striking minorities or to make a record demonstrating neutral reasons. But, in an appeal from the district court, any reliance in the form of failure to keep careful records is of little significance because the time from trial to appeal and remand is short.

Finally, unlike collateral review of final convictions, which *Allen* holds would be unduly disruptive to the administration of justice, application of *Batson* to cases pending in the federal system is more likely to have a positive rather than a negative effect on the administration of justice. It provides an early opportunity for the federal courts to work out "the contours of the Court's Equal Protection holding." *Batson v. Kentucky,* —— U.S. at ——, 106

S.Ct. at 1725 (White, J., concurring). Moreover, it is particularly appropriate for the federal courts, which have had a reservoir of supervisory authority available as a safeguard against misuse of peremptories in individual cases, to apply the mandate of the Equal Protection Clause to cases now pending on appeal. *But see U.S. v. Leslie,* 783 F.2d 541 (5th Cir.1986) (en banc) (pre-*Batson* rejection of use of supervisory authority to monitor prosecutor's use of peremptory challenges).

### B. The *Batson* Prima Facie Showing

■ In *Batson,* the Supreme Court did not specify the showing necessary to establish a prima facie case of discrimination. The Court stated: "We have confidence that trial judges, experienced in supervising *voir dire,* will be able to decide if the circumstances concerning the prosecutor's use of peremptory challenges creates a prima facie case of discrimination against black jurors." —— U.S. at ——, 106 S.Ct. at 1723. In making this determination, trial judges must be guided by the principles enunciated in *Batson.*

Despite diligent efforts, the district court was not in a position to apply the rationale that the Supreme Court has now explained for enforcing the Equal Protection Clause in the context of peremptory challenges to venire members who belong to a cognizable racial group. We therefore remand to the district court to determine whether a prima facie case has been established, and, if so, whether the prosecution has rebutted it.

■ In making the determination, the district court should bear in mind the core teachings of *Batson,* anchored by the principle that a "defendant [has] the right to be tried by a jury whose members are selected pursuant to nondiscriminatory criteria." *Batson v. Kentucky,* at ——, 106 S.Ct. at 1717. "Purposeful racial discrimination in selection of the venire violates a defend-

---

1. In addition, "the rule in *Batson* may have some impact on the truthfinding function of a criminal trial." *Allen v. Hardy,* —— U.S. at ——, 106 S.Ct. at 2881. Because the rule does not go

to the heart of the truthfinding function, however, its connection with accuracy does not compel its retroactive application in collateral proceedings. At ——, 106 S.Ct. at 2881.

ant's right to equal protection...." at ——, 106 S.Ct. at 1717. *Batson* rejects the view in *Swain* that the Equal Protection Clause only requires that black citizens not be deprived of jury service by being systematically excluded from petit juries; *Batson* rests on a rationale that blacks are entitled not to be struck for racial reasons, and black defendants are entitled to be tried in a system free of racially exclusionary practices. This represents more than a group entitlement not to be entirely excluded from participation. Rather, under *Batson,* the striking of one black juror for a racial reason violates the Equal Protection Clause, even where other black jurors are seated, and even when valid reasons for the striking of some black jurors are shown. *Accord Fleming v. Kemp,* 792 F.2d 1478 (11th Cir.1986).[2] Although statistics showing discriminatory impact may in themselves constitute a showing of intentional discrimination, *see Batson,* —— U.S. at ——, 106 S.Ct. at 1721, a statistical showing is not the sole means for establishing a prima facie case of discrimination. The focus of the court's inquiry is to determine whether intentional discrimination has taken place. *Batson,* at ——, 106 S.Ct. at 1721 (citing *Washington v. Davis,* 426 U.S. 229, 240, 96 S.Ct. 2040, 2047, 48 L.Ed.2d 597 (1976)). "[T]he totality of the relevant facts [may give] rise to an inference of discriminatory purpose." —— U.S. at ——, 106 S.Ct. at 1721 (citing *Washington v. Davis,* 426 U.S. at 239–42, 96 S.Ct. at 2047–48).

The trial judge is responsible to make the critical determinations of whether the defendant has established a prima facie showing and, if so, whether the prosecution has rebutted it. Failure by a prosecutor to explain every peremptory strike of black jurors is not necessarily fatal to the prosecutor's ability to rebut a prima facie case; likewise, explanation of most of the strikes on nonracial grounds does not necessarily rebut the inference created by *Batson* that

peremptory challenges constitute a jury selection practice that permits "those to discriminate who are of a mind to discriminate." —— U.S. at ——, 106 S.Ct. at 1723 (citing *Avery v. Georgia,* 345 U.S. 559, 562, 73 S.Ct. 891, 892, 97 L.Ed. 1244 (1953)). The question is one of fact; the district court's finding is "entitled to appropriate deference by a reviewing court." —— U.S. at ——, 106 S.Ct. at 1724 n. 21 (citing *Anderson v. Bessemer City,* 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985)). The "findings ... will turn on evaluation of credibility." —— U.S. at ——, 106 S.Ct. at 1724 n. 21 (citing *Anderson,* 470 U.S. at 565, 105 S.Ct. at 1512–13. Above all, the district court should bear in mind that the command of *Batson* is to eliminate, not merely to minimize, racial discrimination in jury selection. The government notes that David did not point to other relevant circumstances except for the pattern of peremptory strikes to establish a prima facie showing of racial discrimination. On remand, David should be allowed to undertake to make such a showing, and the government should be allowed to supplement its explanations of the peremptory strikes. Each party is entitled to make its case based upon the guidance of *Batson.*

We vacate the district court's holding that David did not establish a prima facie showing of racial discrimination in use of peremptory strikes and remand for further proceedings consistent with this opinion.

VACATED AND REMANDED.

---

**2.** Although the court assumed in *Fleming* that *Batson* may be retroactively applicable in post-conviction proceedings, the *Fleming* analysis of the *Batson* protections is nonetheless instructive.