Charles Leo POTTINGER, Petitioner,

v.

WARDEN, NORTHPOINT TRAINING CENTER, Respondent.

Civ. A. No. 88–0562 L(J).

United States District Court,
W.D. Kentucky,
Louisville Division.

April 28, 1989.

Paul Neel, Louisville, Ky., for petitioner.

Fred Cowan, Atty. Gen., and Lana Grandon, Asst. Atty. Gen., Frankfort, Ky., for respondent.

## MEMORANDUM OPINION

JOHNSTONE, Chief Judge.

This matter is before the court on respondent's motion to dismiss, or in the alternative, for summary judgment to deny the petition for writ of habeas corpus. Jurisdiction is proper pursuant to 28 U.S.C. Section 2254 (1977). Because the court finds none of the petitioner's grounds for the writ persuasive, summary judgment will be granted on behalf of the respondents.

## BACKGROUND

Petitioner Charles Leo Pottinger is presently incarcerated at the Northpoint Training Center in Burgin, Kentucky, as a result of a 1982 conviction in Jefferson Circuit Court of armed robbery and being a first degree persistent felony offender ("PFO"). His 12–year sentence for armed robbery was enhanced to life imprisonment by the PFO conviction. He appealed the convictions, and the Court of Appeals affirmed. Petitioner then filed a motion under Ky.R. Crim.P. 11.42 to set aside the convictions. The Kentucky Supreme Court granted that motion in part and granted a new trial on the PFO charge.

The Commonwealth retried the petitioner before Judge McAnulty in Jefferson Circuit Court. A jury found him guilty and en-

hanced the sentence for his 1982 robbery conviction to 45 years. The Kentucky Supreme Court affirmed the conviction.

Petitioner then filed a petition for a writ of habeas corpus in this court. Although petitioner's pro se response to the motion to dismiss was well written, this court granted petitioner's motion for appointment of counsel because of the complexity of the issues. The appointment was accepted by the Hon. Paul Neel, who has ably responded to the Commonwealth's position.

## MOTION FOR SUMMARY JUDGMENT

 Because the parties asked the court to consider matters outside the pleadings, the court will view the motion as one for summary judgment. Fed.R.Civ.P. 12(b). A court must grant summary judgment when there are no issues of material fact and one part is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The issue of fact must be a real dispute; "(w)here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *First National Bank v. Cities Service Co.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968); *Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc.*, 862 F.2d 597, 601 (6th Cir.1988).

Petitioner, who is black, challenges his incarceration on several grounds. First, he argues the Commonwealth violated his rights under the Equal Protection Clause by striking three black venire members. Second, he argues that the trial judge erred by not directing a verdict of acquittal because the Commonwealth failed to prove an element of the offense. Next, he contends that he was denied due process when the trial judge refused to grant a hearing to challenge the validity of some of the convictions. Finally, petitioner maintains the Commonwealth denied him his right under the United States and Kentucky Constitutions to a speedy trial.

## I.

In selecting the jury, the Commonwealth used three peremptory strikes to remove black members of the panel. Although it had more strikes, it left two black persons on the jury. It did not strike any white members of the panel.

In *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the United States Supreme Court eased the evidentiary requirement for showing racial bais in jury selection. Although the Court had ruled in *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), that using peremptory strikes for discriminatory reasons violated the Equal Protection Clause, it required a defendant to prove by evidence from a great number of trials that the prosecution was systematically removing prospective jurors of the defendant's race for invidious reasons. *Id.* at 223, 85 S.Ct. at 837. *Batson* held that when a defendant makes a prima facie showing of discriminatory use of peremptory strikes, the prosecution must come forward with legitimate, non-discriminatory reasons for using its strikes in that manner. *Batson v. Kentucky*, 476 U.S. at 97, 106 S.Ct. at 1723.

 In this case, the trial judge found that defendant had not established a prima facie case of a *Batson* violation. To present a facial case of discrimination, the trial court is directed to consider all the relevant circumstances, including a pattern of strikes removing black persons, or remarks or questions by the prosecution. The trial court's decision is a matter of discretion. *Id.*

 Petitioner cites *United States v. David*, 803 F.2d 1567 (11th Cir.1986), for the proposition that a defendant establishes a prima facie case merely by proving he is a member of a minority group and the prosecutor struck a member of that group, so that whenever a prosecutor strikes a member of a minority defendant's race, he must give a non-discriminatory reason for the strike. The court reads *David* differently. That case was tried before the Supreme Court announced its decision in *Batson*, and the trial court concluded the de-

fendants had not made the initial showing required by *Swain v. Alabama.* While the case was awaiting appeal, the Supreme Court decided *Batson,* and the Court of Appeals remanded the case for the trial court to consider the new standard. Although the *David* court correctly interprets *Batson* to mean that "the striking of one black juror for a racial reason violates the Equal Protection Clause, even where other black jurors are seated, and even when valid reasons for the striking of some black jurors are shown," *id.* at 1571; that does not mean the striking of one black juror can comprise a prima facie case if the racial reason is not apparent, from statistical inference or other reasons. *Batson* states that the defendant must show he is a member of a racial group, that the prosecutor used peremptory challenges to exclude members of that group, and "that these facts and other circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race." *Batson v. Kentucky,* 476 U.S. at 96, 106 S.Ct. at 1723.

■ The court also rejects respondent's understanding that "*Batson* clearly requires *more* than a simple numerical showing." Memorandum in Support of Motion to Dismiss, p. 6 (emphasis supplied). *Batson* explicitly states that "a 'pattern' of strikes against black jurors included in the particular venire might give rise to an inference of discrimination." *Batson,* 476 U.S. at 96, 106 S.Ct. at 1723.

■ The court has given close study to the record in this case, though with difficulty, a problem deserving further comment. The video and audio quality of the videotape transcript of the trial were never good, and at times, especially when a litigant lowered his voice or spoke while returning to his seat, nearly inaudible. Even if the tape quality were perfect, viewing a videotape requires much more time than reading a transcript. The task of reviewing the record is one a judge cannot delegate, but must waste time watching what he could have read in one-tenth the time. This court spent nearly three hours watching the videotape record of the jury selection and other parts of the trial. If this case is appealed, that time invested will be multiplied by three. If Kentucky insists in continuing its disasterous experiment with videotape records of court proceedings, this court would expect the parties to furnish a written transcript. The court joins the sentiments of the Sixth Circuit Court of Appeals and "wish(es) to call attention to the acute difficulties this innovation presents to courts attempting to fulfill their function of judicial review." *Dorsey v. Parke,* 872 F.2d 163, 165 (6th Cir.1989).

■ After long and laborious reviews of the videotape of the jury selection, this court cannot say the trial judge erred in finding no prima facie case of discrimination. A reviewing court must give weight to the trial court, which is best "able to decide if the circumstances concerning the prosecutor's use of peremptory challenges creates a prima facie case of discrimination against black jurors." *Batson,* 476 U.S. at 96, 106 S.Ct. at 1723. Therefore, the court finds no Equal Protection violation in petitioner's jury selection.

## II.

■ The persistent felony offender statute, *Ky.Rev.Stat.* 532.080 (1984) states that

A persistent felony offender in the first degree is a person who is more than twenty-one (21) years of age and who stands convicted of a felony after having been convicted of two (2) or more felonies.

At the close of the evidence, petitioner moved for a directed verdict because the Commonwealth had offered no evidence of the 1982 armed robbery conviction, the felony of which he stood convicted. The Commonwealth asked to reopen the case, but the trial judge took judicial notice of the 1982 judgment and directed the Commonwealth's Attorney to read the judgment to the jury.

■ A court may take judicial notice of its own records. *Adkins v. Adkins,* 574 S.W.2d 898, 899 (Ky.1978). Even if it could not, the court could have properly allowed

the prosecution to re-open its case. *Hayes v. Commonwealth,* 625 S.W.2d 575, 576 (Ky.1982). There is no constitutional error here.

III.

[redacted] Petitioner next challenges his conviction because he alleges the trial court did not grant a hearing on the validity of the pre–1975 convictions underlying the persistent felon charge, and that his guilty pleas to these convictions were not knowingly and intelligently entered. Upon the petitioner's motion, the trial court held a hearing to determine whether petitioner's guilty pleas were voluntary. Petitioner stated he was not advised of his rights before he entered guilty pleas in Indictment Nos. 153369, 153560, and 154871, all in 1975. On cross-examination, however petitioner admitted he told the judge he had spoken with a lawyer and that he understood he had a right to a jury trial. He also admitted he told the judge he wished to plead guilty because he had committed the crime and that he was satisfied with his defense counsel. His testimony satisfies the requirements of *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), that he understand the implications of pleading guilty.

[redacted] It is difficult to understand why petitioner challenges the lack of a hearing for pre–1975 convictions. His hearing was set to hear his motion "Based on Unconstitutionality of Alleged Prior Convictions." He introduced evidence only about 1975 convictions, even though the trial judge did not curtail the hearing in any way. Nor did petitioner object that he was not allowed to present evidence about pre–1975 convictions. The court can find no due process violation in the conduct of the hearing.

IV.

[redacted] Petitioner's final argument is that the Commonwealth denied him his right to a speedy trial. Twenty-one months passed between the granting of his new trial and his retrial. In *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the Supreme Court set out four factors to consider in a speedy trial challenge: the length of the delay, the reason for the delay, whether the defendant asserted the right in a timely manner, and the prejudice to the defendant. *Id.* at 530, 92 S.Ct. at 2192. While the respondent appears unable to state the reason for the delay, the length—twenty-one months—is not so excessive that the delay would violate petitioner's constitutional rights in the absence of prejudice.

[redacted] The *Barker* court held that prejudice to the defendant "should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect ...: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. *Id.* at 532, 92 S.Ct. at 2193. In this case, petitioner was already serving his armed robbery sentence, so there was no oppressive pretrial incarceration. Nor did the delay impair the defense. Finally, plaintiff does not allege the delay caused him undue anxiety or concern. The court finds no prejudice from the delay, and after balancing the four factors, will deny his speedy trial challenge.

Because the court believes petitioner's trial afforded him all rights guaranteed by the United States and Kentucky Constitutions, IT IS ORDERED that the respondent's motion for summary judgment is GRANTED and the petition is DISMISSED.