[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 25, 2002
THOMAS K. KAHN
CLERK

No. 00-15445

D. C. Docket No. 99-00275-A-N

QUANG BUI,

Petitioner-Appellant,

versus

MICHAEL HALEY, Commissioner,
Alabama Department of Corrections, et al.,

Respondents-Appellees.

Appeal from the United States District Court
for the Middle District of Alabama

(January 25, 2002)

Before TJOFLAT, BLACK and WILSON, Circuit Judges.

TJOFLAT, Circuit Judge:

Petitioner in this case, an Alabama prison inmate, seeks a writ of habeas corpus setting aside his 1986 murder conviction. The United States District Court for the Middle District of Alabama denied the writ, rejecting, among other claims,[1] petitioner's assertion that the Montgomery County District Attorney who prosecuted his case failed to present race neutral reasons for peremptorily striking nine blacks from the venire summoned for petitioner's trial, thereby denying petitioner equal protection of the law as recognized by the United States Supreme Court in Batson v. Kentucky, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986). We conclude that the State failed to carry its burden under Batson, a failure which violated petitioner's right to equal protection. We therefore reverse the district court's ruling and direct the court to issue a writ of habeas corpus conditioned on the State's right to retry petitioner.

---

[1] In addition to his Batson claim, the district court granted petitioner a certificate of appealability on 27 claims of constitutional error. In his brief on appeal, however, petitioner presented only two claims, his Batson claim and a claim that the trial court denied him due process of law when it prevented him from questioning prospective jurors on racial bias. The Sixth Amendment right to an impartial jury and principles of due process grant a criminal defendant the right to have venire persons informed of the race of the victim and questioned as to their racial bias, if any, provided that the defendant specifically requests such questioning. See Turner v. Murray, 476 U.S. 28, 36-38, 106 S. Ct. 1683, 1688-89, 90 L. Ed. 2d. 27 (1986). The district court rejected this claim on the grounds that the questions petitioner posed were overly broad and that the topic of racial prejudice was sufficiently covered by the questions actually posed. We find no error in this judgment. We therefore reject petitioner's due process claim without further comment.

2

I.

A.

Petitioner, Quang Ngoc Bui, a Vietnamese citizen, arrived in the United States in 1975 and married an American woman, with whom he had three children. On April 9, 1986, a Montgomery County grand jury indicted Bui for the capital murder of these three children.[2] Bui was arraigned in the Montgomery County circuit court on April 15 and entered a plea of not guilty. The court scheduled his trial for June 9, 1986. One week prior to the trial, at a hearing convened to consider several matters, the court heard argument on a defense motion to enjoin the prosecutor from utilizing his peremptory challenges systematically to exclude blacks from the jury. After counsel presented the motion, the court, without eliciting a response from the State, stated: "I grant the motion to systematically exclude, but if there are reasons, I will hear those reasons later." After the court ruled, Ellen Brooks, an assistant district attorney for Montgomery County, informed the court that Batson v. Kentucky would control the issue. Referring to the Batson decision, James Evans, District Attorney for Montgomery County, then stated that Batson was inapposite because "[Bui] is of oriental distraction; he is not

_____

[2] At the time of their deaths, the children, Phi Ngoc Bui, Julie Quang Bui and April Nicole Bui were eight, six, and four years of age, respectively.

black."

The trial began as scheduled on June 9. The venire summoned for the trial consisted of forty-eight persons, fifteen of whom were black. Representing the State in selecting the jury, and exercising its peremptory challenges, was James Evans.[3] Ten challenges for cause were made and granted, after which Evans used nine of the State's thirteen peremptory strikes to remove blacks from the venire, while the defense used one of its peremptory strikes to remove a black from the venire. Of the five remaining black venire members, one male ultimately was seated on the petit jury. At the close of the selection process, the court empaneled a jury consisting of this black male and eleven non-blacks, nine males and two females.[4] After the jurors were sworn, the court excused them for a lunch break. The defense counsel then objected to the prosecution's use of its peremptory strikes; he contended that Evans had struck the black venire members on account of their race. Evans responded, stating "[w]e struck those who we believed would acquit. Those strikes were not based not [sic] on race but on just our exercising our right to strike jurors we feel would be most favorable to acquit. On that grounds [sic] only." On receiving Evans' response, the court declared a lunch

---

[3] Although Brooks was seated at counsel table with Evans during the process, the record clearly demonstrates that Evans alone exercised the State's peremptory strikes.

[4] The record does not indicate the race of these 11 jurors.

4

recess.  The court never ruled on the defense's objection.  When the trial resumed that afternoon, the prosecution and defense made their opening statements, and the State began its case in chief.

Three days later, on June 12, the jury found Bui guilty of capital murder and recommended a death sentence.  On July 11, 1986, the court accepted the jury's recommendation and sentenced Bui to death.  The Alabama Court of Criminal Appeals[5] and the Alabama Supreme Court[6] affirmed the conviction and sentence.

B.

The United States Supreme Court vacated both appellate decisions and remanded the case for reconsideration in light of Powers v. Ohio, 499 U.S. 400, 111 S. Ct. 1364, 113 L. Ed. 2d 411 (1991) (holding that a criminal defendant can bring a third party challenge to the peremptory striking of jurors based on race whether or not he is of the same race as the jurors who are struck).  See Bui v. Alabama, 499 U.S. 971, 111S. Ct. 1613, 113 L. Ed. 2d 712 (1991).  The state supreme court in turn remanded the case to the court of criminal appeals, with the instruction that it remand the case to the Montgomery County circuit court for a hearing on the State's use of its peremptory strikes to remove black persons from

---

[5]  Bui v. State, 551 So. 2d 1094 (Ala. Crim. App. 1988).

[6]  Ex parte Bui, 551 So. 2d 1125 (Ala. 1989).

the venire.  See Ex parte Bui, 627 So. 2d 848 (Ala. 1991), Bui v. State, 627 So. 2d 849 (Ala. Crim. App. 1991).  By this time, Evans had become Alabama Attorney General and Brooks was serving as one of his assistants.

The circuit court scheduled the hearing for September 19, 1991.  Brooks appeared for the State and informed the court that Evans would not appear for the State, either as counsel or as a witness.  She requested a continuance so that she could locate the prosecution's files relating to jury selection and, based on those files, explain why Evans had peremptorily struck nine blacks from the venire.  The court granted the continuance and reconvened the hearing on October 2.  At that time, Brooks informed the court that she had been unable to locate either the notes she had made during jury selection or those Evans may have made.  She had, however, determined Evans' reasons for exercising the State's peremptory challenges by reviewing the trial transcript and juror occupation and criminal history lists provided to the prosecution and defense and then "simply compil[ed] that information by juror to help the court remember and see what happened on that occasion."  Based on this review, she represented that Evans exercised the State's strikes on four bases: the jurors' criminal histories, personal knowledge of the defendant, his attorneys or their family members, their employment, and, finally, their ages.

6

During her presentation, Brooks detailed which of these four factors, or which combination of the four, caused Evans to exercise twelve of the State's thirteen peremptory strikes. She was unable to reconstruct any reason for the State's eleventh strike, that of Emma Rhodes, a forty-year-old black employed female with no criminal history. Regarding this prospective juror, Brooks was forced to admit a total lack of "any of the personal information that [the State] had about Miss Rhodes or why [the State] struck her other than she was forty years of age."[7] Based on Brooks' testimony alone, the circuit court found that "the State [had] articulated clear, cogent, and sound reasons for its peremptory strikes, all being racially neutral," and thus held that Bui had failed to convince the court of racial discrimination sufficient to warrant granting him a new trial.

Bui appealed the circuit court's ruling to the court of criminal appeals. While the appeal was pending, Brooks informed the court that she had uncovered the notes she had made during jury selection; she asked that the court remand the case to the circuit court so that she could testify from her notes. The court granted her request, and on January 23, 1992, the circuit court heard additional testimony

_____

[7] This attempt at offering a race neutral reason amounted to no reason at all, as Ms. Brooks had previously stated that "[w]e were looking for people who had some maturity, some experience in life . . . . and we attempted to strike based on the youngest."

from Brooks pertaining to the State's use of its peremptory strikes in Bui's case.[8]

Although Evans was once again absent, and although Brooks once again did not claim to have actual knowledge of Evans' state of mind at jury selection, the circuit court nonetheless reiterated its finding that the State had presented race neutral reasons for the use of its peremptory strikes, and adhered to its earlier decision denying Bui relief. Brooks remained equally unable to suggest a reason for the State's eleventh strike. Since neither of the court's orders denying Bui relief specifically addressed the State's lack of any reason, race neutral or otherwise, for its eleventh strike, the inference is that the court found the presentation by the State of "clear, cogent, and sound reasons" for the other twelve peremptory strikes made by the State to extend by implication to the unexplained eleventh strike.

II.

A.

On appeal, the Alabama Court of Criminal Appeals determined that the record did not support the factual findings of the circuit court. The court first found error with the circuit court's consideration at the remand hearings of Brooks'

---

[8] At no point has the State attempted to offer information contained in Evans' own trial notes to explain the use of the peremptory challenges.

testimony in place of that of Evans.[9]  The court found no evidence in the record to support the lower court's finding that Brooks was relating the specific reasons Evans used in striking the jurors, rather than those she would have used had she exercised the strikes.  See Bui v. State, 627 So. 2d 849, 852 (Ala. Crim. App. 1992).

> Without any indication that Ms. Brooks and Mr. Evans actually agreed on any specific reason for each strike–rather than . . . relying on Ms. Brooks merely being present, observing, and having the same information available to her–it is arguably impossible for us to consider Ms. Brooks's [sic] explanations to be the actual reasons Mr. Evans struck the nine blacks.

See Bui v. State, 627 So. 2d 849, 853 (Ala. Crim. App. 1992).  Alternatively, the court held that even if Brooks' own reasons were acceptable for purposes of carrying the State's burden at the Batson hearing, the State's total failure to present any reason for the striking of the eleventh juror prevented it from rebutting the defendant's prima facie case of race discrimination.  The court of criminal appeals thus concluded that the State had engaged in racial discrimination in the use of its peremptory challenges.

On certiorari, the Alabama Supreme Court reversed the court of criminal appeals' decision, concluding that the record did support the factual findings of the

---

[9]  While the State did object at the remand hearing to the finding of a prima facie Batson case of race discrimination, it did not pursue that objection on appeal and the court of criminal appeals upheld the finding that a prima facie case had been established.

circuit court.  See Bui v. State, 627 So. 2d 855, 858 (Ala. 1992).  Examining the

testimony of Brooks at the remand hearings, the supreme court concluded that "the

trial court *could have* reasonably inferred from [her] testimony that [she] and Mr.

Evans worked as a team in striking the jury," and, thus, that Evans had exercised

the State's peremptory strikes for the reasons she had articulated.  Bui v. State, 627

So. 2d at 859 (emphasis added).  The supreme court thereby found no error in the

circuit court's determination that the State had carried its Batson burden of proof.

Id.  The supreme court also found that the failure of the State to explain its

eleventh strike did not render the circuit court's finding of an absence of racial

discrimination clearly erroneous.  See Bui v. State, 627 So. 2d at 859-60.  Relying

on dicta in an opinion from this court, the supreme court held that "'[f]ailure by a

prosecutor to explain every peremptory strike of black jurors is not necessarily

fatal to the prosecutor's ability to rebut a prima facie case.'"  Bui v. State, 627 So.

2d at 859 (quoting United States v. David, 803 F.2d 1567, 1571 (11th Cir. 1986)).

Following the supreme court's rejection of his Batson claim and the state courts'

refusal to grant post-conviction relief on his other claims,[10] Bui filed the instant

petition for federal habeas corpus relief.

---

[10]  As indicated supra, note 1, Bui attacked his murder conviction on a total of 28 grounds.  Only 2 are before us in this appeal.

B.

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254(d), gives the United States district courts the authority to grant a writ of habeas corpus where the State adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

This statute also directs that a presumption of correctness be afforded factual findings of state courts, which may be rebutted only by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1) (2001). This presumption of correctness applies equally to factual determinations made by state trial and appellate courts. See Sumner v. Mata, 449 U.S. 539, 547, 101 S. Ct. 764, 769, 66 L. Ed. 2d. 722 (1981).[11]

The AEDPA governs Bui's petition for federal habeas corpus relief. Bui raised nineteen claims in his petition to the United States District Court for the

___

[11] Although the Court in Sumner was interpreting section 2254 as it existed pre-AEDPA, the holding hinged on the fact that no distinction was made between state trial-level and appellate courts in the pre-AEDPA version of section 2254–a fact which continues to be true of the current version of the statute.

Middle District of Alabama, including the Batson challenges described above.[12]

The district court upheld the Alabama Supreme Court's holdings on both of the

Batson issues. First, the court held that "the mere absence of Evans at the post-trial

Batson hearing does not prevent the State from satisfying" its Batson burden of

providing race neutral reasons for its peremptory strikes. The court acknowledged

that it was Evans' own intent which was the key to the Batson inquiry, but found

that sufficient evidence of this intent could be found in Brooks' testimony, *if* she

knew his reasons. The court went on to conclude that it was not clear factual error

for the trial court to find, and the supreme court to affirm, that Brooks did know his

reasons, based on her testimony at the remand hearing that she "did participate

with [Evans] in [striking the jury]. [She] was present, [she] observed him strike,

and [they] had the same information available to [them] at that time." This finding

therefore retained the presumption of correctness mandated by the federal habeas

statute.

Next, the court addressed the supreme court's interpretation of federal law

on the question of whether the State's failure to explain its eleventh strike

---

[12] Following its decision, the district court granted Bui a certificate of appealability pursuant to 28 U.S.C. § 2253(c), authorizing Bui to pursue an appeal in this court on 28 separate issues. Of those, only two were presented by Bui before this court–the State's use of its peremptory challenges and the trial court's refusal to allow Bui to question prospective jurors on racial bias. We resolve the former below; we affirm the latter without comment.

12

constituted a <u>Batson</u> violation.  The district court noted the absence of United States Supreme Court precedent in this area and agreed with the Alabama Supreme Court's application of this court's dicta in <u>United States v. David</u>, 803 F.2d 1567 (11th Cir. 1986), holding that the decision established the principle that "a single juror is not necessarily discriminated against merely because a reason for striking that juror has not been articulated, if there are sufficient other factors from which to draw the conclusion that there was no intentional discrimination against that juror."  From this basis, the court determined that the supreme court had not based its decision on an unreasonable interpretation or application of federal law.

Finally, the district court addressed the circuit court's fact finding on the ultimate <u>Batson</u> issue–that no racial discrimination was committed by the State during jury selection for Bui's trial.  The court relied on four factors in concluding that the decision of the circuit court that no discrimination existed was not clearly erroneous: that the reasons offered by the State were not disparately applied; that the reasons were supported by the record; that one black served on the jury; and that the circuit judge had expressed sensitivity to <u>Batson</u> problems.  Thus, the district court accorded this determination the deference provided for in the federal habeas statute, 28 U.S.C. section 2254.

III.

In <u>Batson v. Kentucky</u>, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), the United States Supreme Court held that "[p]urposeful racial discrimination in selection of the venire violates a defendant's right to equal protection." <u>Batson</u>, 476 U.S. at 86, 106 S. Ct. at 1717. Courts must engage in a three-step analysis in evaluating <u>Batson</u> claims. First, the defendant must establish a prima facie case of discriminatory intent on the part of the prosecution. A prima facie case is constructed by a showing by a defendant that "'he is a member of a cognizable racial group' and that the 'relevant circumstances raise an inference' that [the prosecution] has 'exercised peremptory challenges to remove from the venire members of [his] race.'" <u>Fludd v. Dykes</u>, 863 F.2d 822, 829 (11th Cir. 1989) (quoting <u>Batson</u>, 476 U.S. at 96, 106 S. Ct. at 1723). The requirement that a criminal defendant raising a <u>Batson</u> challenge need show commonality of race with excluded jurors was eliminated by the Supreme Court in <u>Powers v. Ohio</u>, 499 U.S. 400, 111 S. Ct. 1364, 113 L. Ed. 2d 411 (1991). Once a court has determined that a prima facie case of discrimination against black jurors has been established, "the burden shifts to the State to come forward with a neutral explanation for challenging black jurors." <u>Batson</u>, 476 U.S. at 97, 106 S. Ct. at 1723. If the State clears this hurdle, the trial court then has the responsibility to determine whether the defendant has established purposeful discrimination. See <u>Purkett v. Elem</u>, 514

14

U.S. 765, 767-68, 115 S. Ct. 1769, 1770-71, 131 L. Ed. 2d 834 (1995) (per curiam).

In this appeal, Bui argues that the trial court erred when it concluded that he had failed to establish a Batson violation. Since this case is governed by section 2254 of AEDPA, we may not grant Bui's petition for a writ of habeas corpus unless Alabama's adjudication of his claim resulted in a decision that was either "contrary to, or involved an unreasonable application of, clearly established Federal law," or "based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(1), (2). We also must presume the state court's findings of fact correct unless rebutted by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1). With these principles in mind, we turn to consider whether the Montgomery County circuit court erred in concluding that the State had successfully carried its burden of proof under Batson despite its failure to present any race neutral reasons of the prosecutor who actually exercised the peremptory strikes, and despite its failure to present any reason at all for one of its nine strikes against black venire members.

## A.

As the district court acknowledged, "[i]t is axiomatic that one cannot know another's state of mind." Nevertheless, Brooks appeared at the remand hearings,

15

attempting to offer proof of Evans' state of mind at the relevant time–the time at which he exercised the State's peremptory strikes. The trial court expressed concern over Evans' absence at the remand hearing, stating: "then another problem I have, and I know Evans is busy and Brooks is presenting this matter, but Evans actually struck the jury . . . . Evans is not here and I can't listen to his comments and reasons . . . . [t]hat's another little problem I have." Brooks acknowledged the difficulty of the situation at the remand hearing, reminding the court that it "must evaluate now *Evans'* state of mind." Despite this fundamental obstacle, the circuit court found that the State had sufficiently carried its burden of proof under step two of the Batson analysis–a conclusion that the court could only have reached if it found that Brooks was presenting the reasons Evans had in mind at the time he exercised the State's peremptory strikes.

This conclusion, however, is wholly unsupported by any evidence in the record. Brooks did state at the remand hearing that "[she] did participate with [Evans] in [striking the jury]. [She] was present, [she] observed him strike, and [they] had the same information available to [them] at that time." The Alabama Supreme Court placed great weight on this statement and on Brooks' use of the word "we" in describing the process of striking the jury, finding that "the trial court *could have* reasonably inferred . . . that Ms. Brooks and Evans worked as a

16

team in striking the jury, and, thus, that the reasons given by Ms. Brooks for striking the black persons from the venire were the reasons" used by Evans at trial. Bui v. State, 627 So. 2d at 859 (emphasis added). While the district court also found no clear error in "a finding [by the circuit court] that Brooks was in a position to articulate the reasons for the state's peremptory strikes," the circuit court itself never explicitly drew such an inference.

Indeed, the circuit court could not reasonably have found that Brooks was in a position to know the inner workings of Evans' mind at trial in light of the evidence presented at the remand hearings. Brooks never claimed to have discussed with Evans his reasons for each of the peremptory strikes he used, either at the time of trial or before appearing on any one of the three separate occasions she appeared before the circuit court on remand. In fact, she never claimed to have discussed the issue with him at all, beyond requesting his trial notes, which she acknowledged she was never able to locate. With no evidence on the record from which to conclude that Brooks was in fact presenting Evans' reasons, we find the conclusion of the circuit court an "unreasonable determination of the facts." See 28 U.S.C. § 2254(d)(2). Without finding this subsidiary fact, the circuit court would have been unable to find that the State had carried its burden, and would have granted Bui relief for the violation of his equal protection rights.

17

The State urges this court to uphold this finding of fact as reasonable because Brooks was familiar with the case, could articulate reasons for all but one of the State's peremptory strikes, and had presented much of the State's case at Bui's trial.[13]  While these facts are all clear from the record, they are simply insufficient to carry the State's burden of proof under the Batson analysis.  Brooks' familiarity with Bui's case and her role at trial have no bearing on her knowledge of the reasons for striking venire members during jury selection.  That she was able to articulate reasons for the peremptory strikes could just as plausibly have resulted from the fact that she "[l]ook[ed] over the transcript and the information still available in the district attorney's office," as from actual knowledge of those reasons.  Bui v. State, 627 So. 2d at 858.[14]

Even if we were to attach some probative weight to these facts, it is a well-established principle that "where proven facts give equal support to each of two inconsistent inferences . . . neither of them being established . . . judgment, as a matter of law, must go against the party upon whom rests the necessity of

---

[13]  At trial, Brooks made the opening statement and examined many of the State's witnesses.

[14]  Brooks' statements at the State court hearings on Bui's Batson claim concerning Evans' reasons for exercising the State's peremptory challenges were not made under oath. Rather, they were made as argument; Brooks was attempting to convince the court that the transcript, juror occupation lists, and the criminal histories of the challenged jurors yielded the inference that, with the exception of Evans' challenge of juror Rhodes, the challenges were not racially motivated.

sustaining one of these inferences as against the other." <u>Pennsylvania R. Co. v. Chamberlain</u>, 288 U.S. 333, 339, 53 S. Ct. 391, 393, 77 L. Ed. 819 (1933). From the evidence available to the circuit court, two inferences emerge. Either Brooks had knowledge of Evans' reasons for striking the jury,[15] or she did not, and was simply offering her own conjecture as to what those reasons may have been.[16] These two inferences are in equipoise. Because the State bears the burden of rebutting the presumption of racial discrimination created by the prima facie case, it is saddled with the second inference, her conjecture, which has no probative value. <u>See</u> <u>United States v. Williams</u>, 936 F.2d 1243, 1245-46 (11th Cir. 1991)

---

[15] If Brooks had testified as to statements Evans made to her before or during selection of the jury involving his intent with regard to exercising the State's strikes, those statements could have been considered by the court under the state of mind exception to the hearsay rule. <u>See</u> <u>Fed. R. Evid.</u> 803(3). Any later statements made by Evans as to why he exercised the State's peremptory challenges, beyond this narrow time frame, would constitute rank hearsay.

[16] The fact that not a shred of evidence of Evans' intent in exercising the State's strikes was introduced, beyond Brooks' mere conjecture, sets this case apart from hypothetical cases in which a petitioner simply waits for a significant enough period of time to pass before raising a <u>Batson</u> challenge in order to take advantage of fading memories and turnover in local prosecutors' offices. In many, if not most, of those cases, some evidence of the prosecutor's state of mind will be left behind--either in the form of statements made by the prosecutor at the time of jury selection and later admissible under the state of mind exception to the hearsay rule, <u>see</u> note 15, <u>supra</u>, or in the form of contemporaneous notes later used to refresh the exhausted recollection of a prosecutor while testifying on the stand. Beyond a doubt, this case will serve as a warning to prosecutors in the position of Evans, not to simply refuse to appear at a <u>Batson</u> hearing when given the opportunity to do so.

We note in passing that this case arose during the time between <u>Batson</u> and <u>Powers</u>. Had <u>Powers</u> been the controlling law at the time of Bui's trial, the judge would have responded to Bui's prima facie showing of a <u>Batson</u> violation by requiring the immediate testimony of Evans. Had this been done, there would have been no reason for the Alabama Court of Criminal Appeals and the Alabama Supreme Court to attempt to reconstruct his thoughts, and no need for the State to rely in this appeal on the speculation of Brooks.

19

(holding that a prima facie case establishes a presumption which the State must overcome with sufficient evidence).

Having established that we are unable to rely on Brooks' statements to conclude that the State had race neutral reasons for exercising its peremptory strikes, we are left with only Evans' good faith assertions at trial that he did not strike based on race, but rather on the basis of who would be "favorable to acquit." With these good faith assertions from the trial record the only evidence before this court of Evans' state of mind in exercising the State's peremptory strikes, we must again conclude that the State has failed to carry its burden under <u>Batson</u> of coming forward with a race neutral explanation. The Supreme Court has instructed that a prosecutor may not "rebut the defendant's case merely by denying that he had a discriminatory motive or affirming his good faith in making individual selections.'" <u>Batson v. Kentucky</u>, 476 U.S. 79, 98, 106 S. Ct. 1712, 1723-24, 90 L. Ed. 2d 69 (1986) (internal quotations and citation omitted). Furthermore, this court has held that vague explanations will be insufficient to refute a prima facie case of racial discrimination. <u>See</u> <u>United States v. Horsley</u>, 864 F.2d 1543, 1546 (11th Cir. 1989). Just as the prosecutor's explanation in <u>Horsley</u> that "I just got a feeling about [one juror] as I have about . . . several others" was deemed insufficient for

vagueness, so, too, must Evans' attempt to justify all nine of the State's strikes against black venire persons by claiming that he felt they "would be most favorable to acquit" Bui. To the extent that the circuit court's determination was based on Evans' statements during jury selection, rather than on the conjecture of Brooks, it was contrary to clearly established Federal law. See 28 U.S.C. § 2254(d)(1). We now consider whether the State's failure to present any reason whatsoever for its eleventh peremptory strike would be sufficient to prevent it from carrying its burden of proof under Batson.

B.

Latching on to dicta in David, the Alabama Supreme Court held that "'[f]ailure by a prosecutor to explain every peremptory strike of black jurors is not necessarily fatal to the prosecutor's ability to rebut a prima facie case.'" Bui v. State, 627 So. 2d at 859 (quoting David, 803 F.2d at 1571). The supreme court also relied on dicta in a Fifth Circuit case, United States v. Forbes, 816 F.2d 1006, 1011 n. 7 (5th Cir. 1987), for the proposition that the existence of extrinsic factors may allow the court to find an absence of racial discrimination where the prosecution has failed to provide the court with a race neutral reason. See Bui v. State, 627 So. 2d at 859-60. In the instant case, the supreme court found these factors to include: (1) that Bui was Vietnamese and tried before the decision in

21

Powers; (2) that the prosecutors were forced to come forward with race neutral explanations five years after trial; (3) that race neutral reasons were given for eight of the nine strikes against black jurors; (4) that neither a black defendant nor a black victim was involved; (5) that one black served on the jury; (6) that the defense itself struck one black venire person; and (7) that the circuit judge himself was black. See id. at 860. Based on these factual findings, the supreme court found no clear error in the circuit court's ultimate finding of an absence of racial discrimination. See id. The district court found first that the supreme court's application of federal law to the instant facts was reasonable under 28 U.S.C. section 2254(d)(1), and second that the state courts did not clearly err in their ultimate fact finding of no discrimination.

The district court correctly upheld the supreme court's application of Federal law as reasonable. It is of course permissible for a trial judge to turn to circumstantial evidence to support an inference that a race neutral reason underlies a particular peremptory strike, despite the lack of any explicit race neutral explanation from the State. Thus, mere failure to explain every peremptory strike of black jurors will not necessarily prevent a prosecutor from successfully rebutting a prima facie case of race discrimination, where there is sufficient circumstantial evidence from which a court can deduce such a reason. The error of

the district court does not lie in its affirming the Alabama Supreme Court's reliance on this legal principle, but in upholding an unreasonable determination of the facts in light of the evidence contained in the record.

It was clearly erroneous for the supreme court to conclude that sufficient evidence existed in the record from which to establish circumstantial proof of a race neutral motivation for the State's eleventh peremptory strike. Of the seven factors relied on by the supreme court in reaching this conclusion, four are wholly irrelevant: that a Vietnamese defendant was tried before the decision in Powers; that there was a five-year delay between the strikes themselves and the remand hearings, where an explanation was necessitated; that the defense struck one black person from the venire;[17] and that a black judge was not convinced that the state's strikes were racially motivated. The factor that would otherwise be the strongest circumstantial evidence, that race-neutral reasons were presented for the other eight strikes of black jurors, is an unreasonable determination of the facts in the record, as discussed in part A. That one black served on the jury, while a significant fact that may be considered as circumstantial evidence, does not itself bar a finding of racial discrimination. See Cochran v. Herring, 43 F.3d 1404, 1412 (11th Cir.

---

[17] As Batson instructs us to be equally protective of the equal protection rights of the potential jurors as we are of those of the defendant, the fact that Bui himself may have unclean hands can have no bearing on our determination of whether the State's use of its peremptory strikes may stand.

23

1995). Similarly, the fact that neither Bui nor the victims were black, while noteworthy, is not alone sufficient to support a court's finding of an absence of race discrimination. We consequently conclude that these latter two factors, standing alone, were insufficient circumstantial proof from which to reasonably conclude that there was a race neutral reason for the State's eleventh strike.

IV.

Bui was denied equal protection of the law by the State's failure to rebut his prima facie case of race discrimination in jury selection, in violation of the principles established in <u>Batson v. Kentucky</u> and its progeny, and is therefore entitled to habeas corpus relief. We therefore REVERSE the district court's decision to the contrary and REMAND the case with instructions to issue a writ of habeas corpus conditioned on the State's right to provide Bui a new trial within a reasonable period of time.

SO ORDERED.